All right. Welcome to day three of our panel. I'm privileged to be sitting with Judge Clement and Judge Ho. I've mentioned in each session so that the Council is aware, Judge Ho is not present for the arguments because of the Dallas tornado a few weeks ago that created considerable calamity in his personal life, and so they're doing well. But he is engaged fully with all the cases we have. We'll be listening to the oral arguments this morning, so stay in the mic so that he can pick it up, and then the three of us will do as we normally do, confer and decide a case. So it is before three Judge panels, just a little bit different because of that particular circumstance. Other than that, we're good to go. First case up, Jane Cummings v. Premier Rehab. Mr. Hummel? Is that right? Hummel? Okay. Alrighty. Thank you, Your Honors, and may it please the Court, my name is David John Hummel, and I, along with Andrew Rozinski, represent the appellant and plaintiff in this matter, Jane Cummings. The central concern for spending clause legislation is fair notice, and when a federal funding recipient discriminates against someone, emotional distress is foreseeable, and therefore, damages for that emotional distress are appropriate. The District Court erred in holding otherwise, and we ask this Court to reverse that judgment and remand for further proceedings. Over and over again, the Supreme Court has reiterated a presumption laid out in Bell v. Hood, where legal rights have been invaded, and a federal statute offers a general right to sue for such invasion, federal courts may use any available remedy to make good the wrong done. In other words, to make someone whole. The Eleventh Circuit Court of Appeals in Sheely v. MRI Radiology Network confronted this issue directly, and so far, it is the only circuit court to do so. And that Eleventh Circuit, until today, of course, and the Eleventh Circuit had stated that compensatory damages for emotional distress, like other forms of compensatory damages, are designed to make a plaintiff whole. And a little bit closer to home, this Court in Halliburton v. Administrative Review Board cited that proposition from Sheely to say that a whistleblower provision from a statute entitled the prevailing employee to emotional distress damages. And that is where the District Court got it wrong. We could break down the District Court's conclusion into three interrelated components. First, the District Court stated that emotional distress damages are like punitive damages. And third, emotional distress damages expose federal funding recipients to unlimited liability. Taking each of those points in turn, first, emotional distress damages have a stark contrast to punitive damages, which punish to deter misconduct. On the other hand, emotional distress damages make someone whole. In other words, punitive damages focus on the recipient, whereas emotional distress damages focus on individual relief to make someone whole, or in other words, to make good the wrong done. The second aspect, foreseeability. Emotional distress is an inevitable byproduct of discrimination. We could see that this is the basis of the contractual relationship between Congress and federal funding recipients, is fair notice. Let me ask you about the discrimination. Your client was blind and what else? And deaf as well. And so she was not discriminated on those basis because she wasn't refused service. She just wanted a sign language person, is that right? That's correct. She requested an interpreter. Other people weren't ever furnished a sign language tutor, whatever. So I'm just not sure about the discrimination. I think she was asking for something above and beyond what would be normal in a facility like this. So can you explain that to me? Of course. Under the Rehabilitation Act, which is one of the statutes at issues, one of the elements is to allow a person, such as a disabled person like Ms. Cummings, to enjoy the full and equal benefits that a service provides. Now because of her deafness, her primary language is American Sign Language, which is a foreign language as compared to English. So she requires an interpreter to understand the procedures of the rehabilitation. What if she wasn't deaf, she was Russian? Would they have to provide a Russian interpreter because she was blind? Or whatever her disability was, if she had another disability? Yes, Your Honor. A federal funding recipient, unless it could show that there is a fundamental alteration to its services or an undue burden, would have to provide interpreter services to allow any individual to participate in what that entity provides. Here for Ms. Cummings, she would need an interpreter to show her with body movements, head tilts, hand movements, and understand exactly what's happening with the rehabilitation services. Without that, she could not understand and not benefit fully and equally as non-disabled patients would be able to. How could she benefit from a sign language tutor if she was blind? Your Honor, she is legally blind from albinism, but she has limited vision. But she cannot write completely in English because it's a second language, and she's not exactly proficient in English to the same level she is in American Sign Language. That's one of the key distinctions between American Sign Language and other language, is that there's not a written component. It's a visual three-dimensional language. So if she had someone in person, she'd be able to see the signs and understand what's happening under her care at Premier Rehab. And then turning back to the third factor that the District Court mentioned in reaching its conclusion, the fact that emotional distress damages could open a federal funding recipient to unlimited liability. Now, unlike punitive damages, emotional distress damages must bear a significant and altogether determinable relationship to the underlying events. On the other hand, punitive damages often bear no relationship to the underlying events. All right, let's go back. Let's assume, for the sake of the discussion, emotional damage. And so we're in the arena of the emotional damage. But let's go back to the notice issue and the fair notice and help me help us understand more so why, in the contractual context as opposed to a tort context, why is there notice under the spending clause for recipients? I mean, I know what Sheila said. I read it. We all read it. But I'm saying expound more on the fair notice piece because that, to me, is a real key ingredient to this. Absolutely. And I have two responses, Your Honor. First, when a federal funding recipient accepts federal money from Congress, it does so with the expectation that it will not violate congressional objectives or federally imposed conditions. The fair notice is implicit in the agreement to accept federal funds. And by way of comparison, Sheila and other cases have recognized that there are certain types of contracts for personal well-being that allow emotional distress damages. For example, carriers and innkeepers are responsible to allow guests that seek their public accommodations to enjoy those services. And one of the things the guests can insist upon is decent and respectful treatment. That is essential in the contract with the innkeeper, just as it is here, whether it's expressed or implied. And as another example, in negligent handling of remains, the contract to inter a body is predominantly personal in nature. And similar logic applies here. Now, in contract cases, it has been allowed to have emotional distress damages in cases involving rights we cherish, dignities we respect, and the basis of the contract being of the mental concern of the individual. The whole point of a statute like the Rehabilitation Act is to protect deaf Americans, for example, from unequal treatment, from being singled out from services. And that is how an entity like Apelli has fair notice that they're on the hook for emotional distress damages. In the restatement itself, it also says that a contracting party is generally responsible to take into account risks that are foreseeable at the time the contract is entered. And because the risk and the fair notice is implicit in the agreement to accept federal funds, entities do have fair notice that they would be on the hook for emotional distress damages for violating statutes like the Rehabilitation Act. Moreover, frequently in cases, emotional distress damages would be the only remedy available to make someone whole. In this case, for example, Ms. Cummings is not entitled to injunctive relief, and there's no analogous State law statute that provides damages. The only harm that she suffered and what would make her whole is money damages for her emotional distress. Now, removing that component from the statute would make the Rehabilitation Act toothless, and it would not provide an incentive for private citizens to act as private attorney generals to sue and enforce the law and assist the Department of Justice in making sure that these statutes are upheld. You were on the 12b-6, and when I tell my proof, remind me, what was the pleading — what's in the pleading vis-à-vis the emotional distress? In specific— What was the last? Yeah. Of course. An explicit reference is in paragraph 27 of the complaint, which is page 58 of the appendix, and it mentions that Ms. Cummings suffered emotional distress and humiliation and frustration because she was denied services by the appellee. Now, Rule 8 of the Federal Rules of Civil Procedure state that there must be a short and plaid statement of the claim showing that the pleader is entitled to relief, and specifically under subsection 3, it just says that demand for relief must be sought and noted. And that is what she has done here. Implicit in her claims for discrimination and ineffective communication is emotional distress, of being unable to enjoy the same services as non-deaf Americans would be able to. Moreover, this Court has allowed compensatory damages if intentional discrimination is showed. So to build upon the third point of the district court's conclusion, specifically that emotional distress damages expose an entity to unlimited liability, there are safeguards in place to prevent that from happening. First and foremost, Ms. Cummings and other plaintiffs would have to show intentional discrimination to even receive money damages. And on a further level, if a jury were to award a clearly excessive verdict under this Court's jurisprudence, judicial review controls that jury verdict and allows it to be reduced based on the relevant jurisdiction and multiplying factors. So there's no concern that merely because discrimination occurred that money damages would be liable. There's both intentional discrimination and there's this Court's judicial review. Turning back to the presumption in Bell v. Hood, the Supreme Court made clear and reiterated that point over and over again, that where legal rights have been invaded and a Federal court may use any available remedy to make someone whole, to make good the wrong done. And that's exactly what emotional distress damages do. Now, Sheely is the only circuit case, at least cited in the only one we found. That's a 2007 case. Are there other cases which have construed Sheely and followed it, district court or otherwise? Your Honor, since Sheely's decision, as noted on page 9 of our initial papers in a footnote, there are numerous district court cases that have adopted Sheely's principles throughout the country to say that emotional distress damages are available under spending clause legislation. What about to the contrary? To the contrary, there are a limited universe of cases that disagree with Sheely. Some implicitly because it predates Sheely and others that post-date Sheely and use a faulty analysis. For example, a case relied on by the district court and the appellee is Kahn v. Albuquerque Public Schools, using similar three-point analysis in terms of foreseeability, a comparison to punitive damages, and unlimited liability. But Kahn itself recognizes that there are contracts for personal well-being in which awards for money damages for emotional distress are commonplace. In fact, Kahn even cites the statement which states that a contracting party is generally responsible for taking account of risks that are foreseeable. And that's what a federal funding recipient like appellee must do here. It is foreseeable when you violate anti-discrimination statutes that emotional distress will inevitably flow from that conduct and affect individuals like Ms. Cummings. When she went to the other rehabilitation facility, did they provide a language tutor? It's unclear based on this appendix whether she received interpreter services when she went months later after she requested for Premier Rehab. But specifically here, Premier Rehab, as a federal funding recipient, has to provide an American Sign Language interpreter. I know you're saying that, but I'm asking you, are other facilities that take federal funding, do they provide sign language interpreters? Did she find one? We're unaware if the service that she went to accepts federal funds, but as a general principle, any federal funding recipient like appellee would have to provide an American Sign Language interpreter. We don't know if they do. You're saying these people had to, but they didn't. So I'm asking you, is there a federally funded facility for rehab that she could have gone to instead of this one that actually would provide a tutor? And if you don't know that, you can say you don't know. We don't know for sure based on the facility that she went to, but for federal funding recipients, they would have to provide that American Sign Language interpreter. And their failure to do so will inevitably cause emotional distress. And for all these reasons, we ask that this Court reverse the district court and remand for further proceedings. Thank you very much. Thank you. All right. Mr. Bradley. May it please the Court. Scott Bradley on behalf of Appellee Premier Rehab Keller, PLLC. I would like to begin by distinguishing the applicability of the Fifth Circuit's Halliburton case first, and then I would like to turn to why I believe Appellant's arguments with respect to Sheely and Appellant's particular case does not comport with the outline that was set forth by the Supreme Court in Barnes. With respect to Halliburton, that, of course, was a Sarbanes-Oxley whistleblower type case. And because of that, there was a statute that explicitly provided the relief for employees that felt they'd been retaliated against. And that particular language allowed employees to obtain all relief necessary to make the employee whole. And then it went on to reiterate or to state compensatory damages included reinstatement, back pay, and compensation for any special damages. Now, the Fifth Circuit went on to say that because of the non-exclusive language, that also included emotional distress damages because they were also in the nature of compensatory damages. And where I think it's faulty for Appellant to use Halliburton as precedent to say that they should get emotional distress damages is because, as addressed in Barnes, there is an explicit grant of that relief. And Appellant and Sheely recognized that there is no explicit grant of relief in 504 of the Rehabilitation Act. So I think that Halliburton can be very quickly and easily distinguished for that reason. And therefore, it shouldn't be considered precedent and determinative in this case. Turning to Barnes, the framework set forth in Barnes is that relief, all relief that is appropriate should be provided. Now, the qualifier is appropriate. And Barnes clarified that what is appropriate is either what is explicitly set forth in the statute or what might be traditionally available. And, of course, Barnes was examining punitive damages, and what Barnes concluded is that they are not explicitly provided for in any statute in the Rehabilitation Act. They are not normally available and, and this is a very important and, they are of indeterminate magnitude. And so to take away from Barnes, because it was limited to punitive damages, if you were trying to create a broader criteria for what type of damages are recoverable, the criteria you should look at is, A, are they normally available under contract law? And, two, or B, are they of a determinable magnitude? And that is where I think the Sheely Circuit Court and Appellant are erring in their arguments here because, first and foremost, both Appellant and Shelley admit that this is not a traditional, emotional distress is not a traditional damage under contract law. But you acknowledge emotional distress damages are typically compensatory damages. They are compensatory in the nature of the dichotomy between compensatory damages and there is a difference between calling a damage compensatory and the concept that a damage is compensable. And if you look at the cases and the contract law, it has traditionally not been held to be compensable. That doesn't change the fact that emotional distress might be compensatory in nature, but you can't recover it. And you can't, I beg your pardon? I think you are kind of wordsmithing on me there, using the same word in a different way. My point was simply Barnes undeniably dealt with punitive damages. Undeniably. So, you know, the framework is the Supreme Court, but it is talking about punitive damages. In this case, the district court relied on Barnes and the punitive damages aspect to deny the relief and somewhat equated the emotional damages to the punitive damages. So can we allow for the sake of discussion, there is a line between punitive damages and other kinds of compensatory relief. You would agree with that, right? I would agree with that. But you are not arguing that Barnes expressly prohibits the relief here because of its language, right? No, I am not. It is not expressly prohibited. I believe what the district court in our case did, and this was done in the Kahn v. Albuquerque Public Schools case, is they looked at this how to address the scope of damages in a Rehabilitation Act case, and it took from it the contract law criteria that was applied by Barnes. And when we look at what Sheely did, Sheely admitted that it wasn't a traditional damage under contract law, and then went hunting for these exceptions. And the exceptions that they found were in the nature of these personal contract laws that Appellant recently referred to. And the language in Sheely was that in characterizing these cases, the ones involving innkeepers and parties that handle remains, emotional disturbance was the likely result of the breach. And in Kahn, the district court actually took that a little further, the way it described it, as these are extreme cases where plaintiffs' emotional well-being is already at issue at the time of the contract's formation. And I think what is missing in this analogy that Sheely and Appellant is arguing with these personal contract cases is, number one, it isn't a personal contract here. This is a contract between a federal funding recipient, and most likely Medicare. And the cases involved are not ones in which Ms., in this case Ms. Cummings, that her emotional well-being would have necessarily been at issue at that very time of contract formation. Back up a step. Clearly, the restatement provides emotional distress is typically not allowed. I mean, that's the given. So we're talking about an exception where it is allowed, right? Yes. But you've given the examples of the personal contracts. So the restatement says it's an exception, but breach of a contract where it's particularly likely to cause serious emotional disturbance, particularly likely. So the question is, and in Sheely, the rule is not allowed, but there are exceptions where it is, in the contract. Because in the tort context, typically emotional stress, to get it, is anchored to some kind of physical injury or something else. It's usually ancillary to some other injury that a person has. In the contract context, clearly that's not required. My question is, is back to where we asked counsel opposite about this notice and the foreseeability. It seems that in the restatement it allows for emotional stress, but it's where it's, quote, reasonably foreseeable. So I take you to where counsel opposite, in terms of, in this case, we're talking about the Affordable Care Act and the Rehab Act. So speak to the question of, quote, reasonable foreseeability in this exceptional arena where it might be allowed and why it's not, from your standpoint, reasonably foreseeable. Yes. And I think a lot of that is going to factor into the component of the determinability or indeterminable magnitude of these damages. Because both appellant and the Sheely case admit, or the way they seem to address it, is by saying, well, yes, emotional distress damages are difficult to determine. But that's not the issue. The fact that they can be determined, and it's just a difficult process. What the issue is, it's not foreseeable to the premier rehab tellers of the world that there is going to be this potentially award of an indeterminate magnitude that is going to be coming their way from what might be as little as three phone calls to their place of business. And that is where I think the foreseeability argument that appellant and both Sheely are making breaks down. Because whereas you might be able to make the argument that if you discriminate against someone, they might be distressed by it, I don't think that you can then add to that that it's foreseeable that there is then this blank check that goes along with it where there could be an award of a significant magnitude. That was troubling to the Supreme Court in Barnes. Now, granted, it was the context of punitive damages. But they observed that these type of awards could well be disastrous. And the district court in this case hopped on board with that and said, yes, these type of awards could be very significant. And I believe it quoted Barnes, the language, the term disastrous. And so that's where I think the foreseeability argument that appellant is advancing falters. Well, we are in the spending clause framework. So what else helps us understand or analyze the fair notice issue with respect to spending clause jurisprudence? Well, in terms of some of the observations that were made in Barnes, which is that if you basically have, if you were to ask a funding recipient, would they have been likely to agree to expose themselves to this type of indeterminate liability, Justice Scalia wrote that they probably would say no. Not only that, it would be doubtful that they would have even accepted federal funding in the first place. And so I feel that the perspective of this foreseeability is very questionable and very tenuous. And for that reason, that appellant's argument and Sheely's premise that appellant is arguing should be persuasive here today should instead be rejected. I did want to briefly address as well the comment that this is going to be Ms. Cummings' only relief. And to paraphrase Barnes, not all relief is appropriate relief. And then to apply that here in this situation, just because you are only entitled to one type of relief, in this case, emotional distress damages, because Ms. Cummings doesn't have grounds for injunctive relief, she can't support a claim for pecuniary damages, just because that's your only relief that's available to you doesn't then convert it to appropriate relief. The criteria that Barnes articulated about it being normally available, it being of indeterminate magnitude, that still applies. So I don't believe that plaintiff or, excuse me, appellant should be able to go in the back door and say this is our only option here. If you dismiss this, then she can't collect. I don't think that should trump the idea that the only type of relief that should be recovered is appropriate relief. And again, while we're on the subject of consequences of a reversal of this ruling, I think it's appropriate to point out that the limited facts that are in the record are that Ms. Cummings called Premier Rehabilitation of Keller three times. She was told that they had means to accommodate her in accordance with the ADA and the Rehabilitation Act, but she wanted a very specific accommodation. But we're set to 12B6 state, so we're not evaluating whether she could prove it or not, right? No, sir. No, we're not. And I'm really only bringing this up because I do believe that there's policy arguments both in appellant's brief and appellee's brief, and I didn't want to let that go, because I think the policy or the consequences angle of this is that because of these very limited contacts, the consequences of affirming, excuse me, reversing this and adopting the Sheely approach is going to expose the Premier Rehab Kellers and the other thousands or tens of thousands of funding recipients to this potential lottery or award of indeterminate magnitude that they could not have possibly foreseen at the time they took that Medicare check. That's a good policy argument, but we're stuck trying to plot what the case is not the policy, you know, or is it? So let me bring you back. Sheely was decided in 2007, so it's 12 years old on the books. I asked counsel opposite, you know, what other cases have construed it or, you know, gone the other way. I don't know if anybody applied for cert in it or not. I didn't check all that, but because you argued Barnes, they say in Sheely first the, quote, the Barnes Court central reason for turning to the contract metaphor appears to be its concern with ensuring that federal funding recipients have fair notice of any liability to which they are subject to federal courts. We think it fairly obvious, and case law supports the conclusion that a frequent consequence of discrimination is that the victim will suffer emotional distress. As a result, emotional distress is a foreseeable consequence of funding recipients' breach of their contract with the federal government not to discriminate and on and on, and then they go through the spending cost analysis. So that's the language that's there. I mean, I know what your view on it. I'm just, you know, we're just trying to figure it out. I'm tethered to it, but because much of your argument is anchored to Barnes, I just wanted to identify that, you know, they do speak to what Barnes says they say in their holding. It's really anchored back to Bell v. Hood in terms of this whole calculus. So, you know, again, I guess my question to you, if we reverse, as you argue, we create a circuit split, and, you know, I guess that would be that as opposed to other things. So is that what you're urging? I mean, I know your argument about opening up Pandora's box and all that, but I'm just not trying to read the statute, read the act. Is there fair notice? Is there foreseeability, et cetera? And just one thing I would point out, and this is where I think that there's a path through for affirming this judgment, is Sheely didn't address the second prong of Barnes' concern about damages being of indeterminate magnitude. And I come back to the discussion that both Appellant has in their briefing and Sheely made, which is, yes, emotional distress damages are difficult to calculate, but that doesn't mean they shouldn't be calculated and we shouldn't try to do it. I think that misses the point. The point is not that it's hard for a jury to arrive at a calculation of emotional distress damages. It's the foreseeability to the federal funding recipient of what that jury verdict is going to be. As a trial attorney, I don't lose sleep over economic damages. I lose sleep over non-economic damages, emotional distress damages. What are jury verdicts going to do? What are juries going to do with that? And I'm a trial lawyer of 22 years. I can't imagine what would be foreseeable to a federal funding recipient who thinks that what they're doing is arranging to basically receive Medicare reimbursement for treating patients. And so that's where I think Sheely omits a prime concern of the Supreme Court. What I would ask is that the Court affirm the judgment of the District Court in favor of Premier Rehabilitation Keller. Thank you. Thank you, Your Honor. I would like to address four points on rebuttal. First, we know that emotional distress damages are foreseeable because this Court has told us in Halliburton. In that case, the Court said the most... You do keep saying Halliburton, but I think he makes a fair point. I have some recollection of Halliburton. I think I was on the panel. Yes, Your Honor. Since it keeps coming up, I'm sure I was. And it was a Sarbanes-Oxley, as I'm being forced to remember this. So I'm not too sure you ought to use your four minutes and 20 seconds talking about Halliburton. Your Honor, there is an important comparison between this case and Halliburton because in Halliburton, this Court said that the most usual and predictable results of threats and harassment is... Well, we say a lot of things. But you got a whole different statute, Sarbanes-Oxley. We could spend 20 minutes going through that. I'm just saying you can use it how you want to. But I think if you spend four minutes talking about Halliburton, I don't think that's going to get you where you need to be. Of course, Your Honor. I'm about to pivot away from Halliburton. But in Halliburton specifically, this Court said that emotional distress damages for, in the compensatory damages realm, makes someone whole. And in doing that proposition, this Court cited Sheely that said the exact same thing. Turning to my second point, just as a general backdrop, Federal funding recipients are legally required to provide effective auxiliary aids and services. In this case, Ms. Cummings has plausibly alleged that that would be an interpreter. The District Court did not find that there were issues with her claim itself, solely with damages. So a Federal funding recipient would be required to provide an interpreter if that's what Ms. Cummings needs. The third point, Apelli mentions that Sheely does not address Barnes v. Gorman's concern about punitive damages. That was said in the Apelli's brief and also here in oral argument, but that's not true. Specifically in our reply brief on page 8, we note that the Eleventh Circuit underscored that emotional distress damages are different than punitive damages because emotional distress damages are tethered to the underlying events, where punitive damages often bear no relation to the underlying events and could result in indeterminate magnitude. And the final point is, the Apelli mentions that this opens up Federal funding recipients to a blank check, that they would be on the hook for unknown amounts of money. But the simple answer under Federal anti-discrimination statutes is to not intentionally discriminate against individuals. Now, if Ms. Cummings can show that she was intentionally discriminated against, she would be entitled to emotional distress damages to make her whole. That is the presumption that this Court — that the Supreme Court laid out in Bell v. Hood, where legal rights have been invaded here that she's unable to participate in premier rehab facilities. And a Federal statute, like the Rehabilitation Act, provides a general right to sue to recover for such invasions. Federal courts may use any available remedy to make someone whole. And that's exactly what this Court can do here. Emotional distress damages would make Jane Cummings whole, because under the Fair Notice provisions of Spending Clause legislation, emotional distress damages are an inevitable byproduct when someone is discriminated against, when they're discriminated against. That would be consistent with this Court's precedent, Supreme Court precedent, and both contract principles as a general matter. Emotional distress damages would make Jane Cummings whole, and the district court errant in holding otherwise. And for all these reasons, we ask that this Court reverse the district court's judgment and remand for further proceedings. Thank you very much. Thank you, sir. All right. Thank you for the briefing and argument in the case. To say the least, we will consider it and decide it. All right. We'll call up the next.